George WASHINGTON, Jr.,
Plaintiff–Appellant,

v.

Donna SHALALA, Secretary of Health and Human Services, Defendant–Appellee.

No. 93–5252.

United States Court of Appeals,
Tenth Circuit.

Sept. 15, 1994.

Paul F. McTighe, Jr., Tulsa, OK, for plain-
tiff-appellant.

Stephen C. Lewis, U.S. Atty., Kathleen Bliss Adams, Asst. U.S. Atty., Tulsa, OK, Gayla Fuller, Chief Counsel, Region IV, Charlene N. Seifert, Acting Chief, Social Sec. Branch, Joseph B. Liken, Supervisory Asst. Regional Counsel, Social Sec. Branch, Office of the General Counsel, U.S. Dept. of Health and Human Services, Dallas, TX, for defendant-appellee.

Before MOORE and KELLY, Circuit Judges, and BABCOCK,** District Judge.

JOHN P. MOORE, Circuit Judge.

Plaintiff appeals the district court's affirmance of the decision of the Secretary of Health and Human Services denying plaintiff's applications for disability insurance and supplemental security income (SSI) benefits.[1] The Secretary found that plaintiff could return to his past relevant work as a barber and a custodian and, therefore, was not disabled. Plaintiff contends that the Secretary failed to consider his nonexertional limitations adequately when determining plaintiff's residual functional capacity (RFC) for work, and that the Secretary failed to compare the specific demands of his past relevant work with his particular limitations when concluding that plaintiff could return to that work. We agree.

Plaintiff filed his present applications in August 1988 and alleged he was disabled due to bipolar disorder, vision loss, back strain, and foot problems. Plaintiff's applications were denied administratively. After conducting two de novo hearings, the administrative law judge (ALJ) concluded that plaintiff was not disabled. When the Appeals Council denied review, the ALJ's decision became the final decision of the Secretary.

Plaintiff was sixty years old at the time of the hearings before the ALJ, and carried a long-standing diagnosis of bipolar disorder, for which he took medication. Plaintiff also was blind in his right eye and had impaired vision in his left eye. Plaintiff had been living in an apartment at the Star Community Mental Health Center, a transitional living center, since July 1988. At Star, plaintiff was required to check in daily and to participate in therapy sessions at least three times a week.

The ALJ concluded that plaintiff's bipolar disorder limited his ability to perform basic work activities and, therefore, constituted a severe impairment. The ALJ further concluded that the disorder did not meet or equal the criteria of the listings for any mental disorders set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. Therefore, the ALJ proceeded to step four of the five-step sequential analysis. *See Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir.1988) (describing the five steps). At this step, the ALJ determined that plaintiff retained the RFC to perform a full range of medium, light, and sedentary work and, therefore, could return to his past relevant work as a custodian and a barber. Although the ALJ mentioned plaintiff's vision loss when summarizing the medical evidence, he did not discuss how that loss impacted plaintiff's ability to do work.

■ We review the Secretary's decision to determine whether it is supported by substantial evidence and whether the Secretary applied the correct legal standards. *Emory v. Sullivan*, 936 F.2d 1092, 1093 (10th Cir. 1991). Because "[s]ubstantiality of evidence must be based upon the record taken as a whole," *Broadbent v. Harris*, 698 F.2d 407, 412 (10th Cir.1983), we must "meticulously examine the record," *id.* at 414, to determine whether the evidence in support of the Secretary's decision is substantial and "take into account whatever in the record fairly detracts from its weight," *Nieto v. Heckler*, 750 F.2d 59, 61 (10th Cir.1984). " 'Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.' " *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir.1984)

** Honorable Lewis T. Babcock, District Judge, United States District Court for the District of Colorado, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

(quoting *Smith v. Heckler*, 707 F.2d 1284, 1285 (11th Cir.1983)).

■ We note at the outset that the ALJ failed to consider plaintiff's vision loss in conducting the step four inquiry. This failure, alone, would be grounds for reversal. Our analysis does not end here, however, because the ALJ committed other errors that need to be corrected on remand.

We turn, then, to the ALJ's assessment of plaintiff's RFC for work. When a claimant suffers from a severe mental impairment that does not meet or equal the criteria of the listings for mental disorders, "[t]he determination of mental RFC is crucial to the evaluation of an individual's capacity to engage in substantial gainful work activity." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A). In assessing a claimant's mental RFC, the ALJ should consider, among other things, the claimant's ability to engage in the activities of daily living; to interact appropriately with the public, supervisors, and co-workers; to focus long enough to complete tasks in a timely fashion; and to adapt to stressful circumstances without either withdrawing from the situation or experiencing increased signs and symptoms of the claimant's mental disorder. *Id.* § 12.00(C).

The only one of these factors that the ALJ discussed in his opinion was plaintiff's ability to work without deteriorating or decompensating. The ALJ found both that the record contained affirmative evidence that plaintiff had worked without decompensating during the relevant period[2] and that the record contained no evidence that plaintiff had decompensated or deteriorated in a work-type setting. In so concluding, the ALJ rejected the opinions of Dr. Grayson and Dr. Luc, who treated plaintiff at Star. Both of these psychiatrists were of the opinion that plaintiff's condition deteriorated under a great amount of stress and that plaintiff was not able to cope with work settings or other people in a work environment because he was not able to function adequately under stress.

■ "[T]he Secretary must give substantial weight to the evidence and opinion of the claimant's treating physician, unless good cause is shown for rejecting it." *Reyes v. Bowen,* 845 F.2d 242, 244–45 (10th Cir.1988). If an ALJ rejects the opinion of a treating physician, he or she must articulate "specific, legitimate reasons" for doing so. *Id.* at 245. The ALJ rejected the opinions of Drs. Grayson and Luc for several reasons, none of which were legitimate under the circumstances here.

First, the ALJ determined that the opinions conflicted with those of Dr. Passmore, a psychiatrist who examined plaintiff in October 1988, apparently at the request of the Secretary, and Dr. Goodman, the psychiatrist who testified as a medical adviser at the second hearing. Specifically, the ALJ noted that both Dr. Passmore and Dr. Goodman thought that plaintiff's bipolar disorder was under good control with medication. In addition, the ALJ said, Dr. Passmore observed that "claimant's psychological stresses were minimal and that his adjustment appeared to be good." Appellant's R., Vol. II, at 20.

■ None of these observations, however, conflicted with the opinions of Drs. Grayson and Luc that plaintiff could not function well under the stress of the work place. In fact, the reason Dr. Passmore said that plaintiff's "psychosocial stressors are minimal," *id.* at 576, was because plaintiff was living at a transitional living center, where his activities, as Dr. Passmore described them, were minimal: "He gets up and tries to find something to do and said it is hard to do. He goes to group meetings at 9, 1 and 4 if he wants to. He watches TV occasionally. He reads. He is given $175 a month and he gets food

---

2. Before he filed the applications at issue, plaintiff had applied for and been denied both insurance disability and SSI benefits. The ALJ determined that the denial of those benefits on October 28, 1987, was res judicata as to plaintiff's present claims, and plaintiff has not contested this finding. Therefore, in determining whether plaintiff was eligible for benefits, the ALJ concerned himself only with evidence of plaintiff's condition after October 28, 1987. In addition, because plaintiff was last insured for benefits on March 31, 1988, to obtain disability insurance benefits, plaintiff had to establish that he became disabled on or before that date. *See Potter v. Secretary of Health & Human Servs.*, 905 F.2d 1346, 1347 (10th Cir.1990). To obtain SSI benefits, plaintiff had only to show that he was currently disabled.

stamps." *Id.* at 575. Further, because both Dr. Grayson and Dr. Luc were treating physicians, their opinions were entitled to more weight than those of Dr. Passmore, who examined plaintiff only once, and Dr. Goodman, who based his opinion solely on the record evidence and plaintiff's testimony at the second hearing. *Broadbent,* 698 F.2d at 412.

Second, the ALJ determined that the opinions of Drs. Grayson and Luc were insufficient in and of themselves. As an initial matter, the ALJ apparently discounted the weight of the opinions based on his belief that "the claimant's file does not contain any further medical record which reflects that either Dr. Grayson or Dr. Luc had seen the claimant on any other occasion prior to or subsequent to the dates of their opinions." Appellant's R., Vol. II, at 20. Contrary to the ALJ's statement, the record reflects that Dr. Grayson, who wrote the opinion at issue in October 1988, saw plaintiff in August, September, and November of 1988. Likewise, Dr. Luc, whose challenged opinion was written in April 1989, saw plaintiff in February, March, April, May, August, October, and December of 1989, and in January and February of 1990.

█ The ALJ also faulted the opinions of Drs. Grayson and Luc because neither physician "provided any examples or incidents which reveal that the claimant had decomposed [sic] under work type settings" or "results of diagnostic tests of medical findings which led them to their conclusion." *Id.* While it is true that "[a] treating physician's opinion may be rejected if his conclusions are not supported by specific findings," *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1029 (10th Cir.1994), the statements by Drs. Grayson and Luc that plaintiff's condition deteriorates under stress are specific medical findings. Therefore, the ALJ erred in rejecting those opinions in the absence of conflicting evidence.

The ALJ evidently found such conflicting evidence in the records from Star concerning plaintiff's attempts to work at several local barber shops. During the time he lived at Star, plaintiff, who had worked as a barber until sometime in 1978, hoped to enter barber school to retrain and reenter the field. Toward that end, plaintiff attempted to work at three different barber shops. The notes from plaintiff's morning check-ins at Star reflected on several occasions that plaintiff either intended to go to work that day or had worked on the previous day. Most of these notes also reflected that plaintiff had a "bright affect." From these notations, the ALJ concluded that plaintiff had worked as a barber successfully and without decompensating.

This conclusion is not supported by substantial evidence in the record. Even if we assume that all the notations referring to plaintiff's "work" meant work at a barber shop, many of the notations reflect only plaintiff's intention to work, and not whether he actually did work. Moreover, the records from Star do not reflect what plaintiff did at the barber shops. The only evidence concerning plaintiff's actual activities at the barber shops came from plaintiff's testimony, which the ALJ rejected as not credible. Plaintiff testified that he only "mess[ed] around" at the barber shops, Appellant's R., Vol. II, at 113, that he was not familiar with the new styles, and that he was too nervous to use clippers or a razor. Plaintiff said that he cut hair for free just to see if he could still do it and that the people were not satisfied with the haircuts he gave. When questioned by the ALJ, plaintiff indicated that he had cut the hair of ten to fifteen people over a two-year period.[3] Because the only evidence of record concerning plaintiff's barbering "work" indicates that plaintiff was not performing that work at the level necessary for substantial gainful activity, the ALJ's determination that plaintiff could work without deteriorating under stress is not supported by substantial evidence in the record.

█ The ALJ further erred by failing to discuss the other factors relevant to plaintiff's mental RFC. The only reference to these other factors appeared in the Psychiat-

---

**3.** The ALJ erroneously described this as a "2 or 3 *week* period of time." Appellant's R., Vol. II, at 20 (emphasis added).

ric Review Technique (PRT) form that the ALJ completed in connection with his decision. "[T]here must be competent evidence in the record to support the conclusions recorded on the [PRT] form and the ALJ must discuss in his opinion the evidence he considered in reaching the conclusions expressed on the form." *Woody v. Secretary of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir.1988). Not only did the ALJ fail to discuss the evidence on which he relied in completing the PRT form, but his conclusions on the form concerning plaintiff's functional limitations differed from the opinions of Drs. Grayson and Luc, as well as the opinions of the agency's medical consultants who completed PRT forms in connection with the initial consideration and reconsideration of plaintiff's applications.

In sum, when completing the first part of the step four analysis—assessing plaintiff's RFC—the ALJ completely failed to consider plaintiff's vision loss and inadequately evaluated the effect of plaintiff's mental impairment on his ability to work. The ALJ also erred when completing the next two parts of the step-four analysis: he failed to make the necessary findings regarding the physical and mental demands of plaintiff's past relevant work and he failed to make the necessary findings regarding plaintiff's ability to do that work given his RFC. *See Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir.1993).

■■■ The ALJ's failure to make the requisite findings may have sprung from his failure to develop a sufficient record on which those findings could be based. Even when a claimant is represented by counsel, an "ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Id.* at 360–61. While the claimant retains the burden of showing that he is disabled at step four, the ALJ has a duty "of inquiry and factual development." *Id.* at 361. The ALJ must obtain adequate "factual information about those work demands which have a bearing on the medically established limitations." Social Security Ruling 82–62, Soc.Sec.Rep.Serv., Rulings 1975–1982, 809, 812 (West 1983). Further, when the claimant's impairment is a mental one,

> care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work.

*Id.* The ALJ, here, did not elicit any evidence regarding the mental demands of plaintiff's past work as a barber or a custodian, and the record contained little or no evidence concerning the physical demands of those jobs.

On remand, the ALJ must not only develop the record concerning the demands of plaintiff's past relevant work, but make findings that compare the mental and physical demands of that work with plaintiff's capabilities. In so doing, the ALJ should bear in mind two additional principles. First, in determining the capacity for work of a mentally impaired claimant whose "overt symptomatology may be controlled or attenuated by psychosocial factors," such as living in a structured environment, the ALJ must consider the claimant's ability to function outside the structured setting. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F). Therefore, the ALJ should consider whether plaintiff can function outside the structured environment created by Star's transitional living center and, if he cannot, then the ALJ should consider whether plaintiff can continue to reside at Star and participate in the therapy sessions while engaging in substantial gainful activity as either a barber or a custodian.

Second, "[a] finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time." *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir.1986); *accord Dix v. Sullivan*, 900 F.2d 135, 138 (8th Cir.1990); *Pagan v. Bowen*, 862 F.2d 340, 350 (D.C.Cir.1988); *see also Byron*, 742

F.2d at 1235 ("In order to engage in substantial gainful activity, a person must be capable of performing on a reasonably regular basis."). The record shows that even when plaintiff attempted to work at a barber shop, his work was sporadic, his customers were not satisfied with his work, and he was "fired" at least once, *see* Appellant's R., Vol. II, at 651.

Because the ALJ failed to apply the correct legal standards and his opinion is not supported by substantial evidence in the record, we must REVERSE the judgment of the United States District Court for the Northern District of Oklahoma, and REMAND the case with directions to remand the action to the Secretary for further proceedings consistent with this opinion.