**Bernard G. SCHMITZ, Plaintiff,**

v.

**John J. CALLAHAN [1], Acting Commissioner of Social Security, Defendant.**

**Civil Action No. 96-2118-GTV.**

United States District Court, D. Kansas.

July 17, 1997.

---

1. President Clinton appointed John J. Callahan to serve as Acting Commissioner of Social Security, effective March 1, 1997. Accordingly, pursuant to Fed.R.Civ.P. 25(d)(1), John J. Callahan is substituted for former Commissioner Shirley S. Chater as defendant in this suit.

Gregory A. Dean, Overland Park, KS, for Bernard G. Schmitz.

Nancy M. Landis, Office of U.S. Atty., Topeka, KS, for Commissioner of Social Sec.

## MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Commissioner's final decision denying his claim for retirement benefits under Title II of the Social Security Act. The court has reviewed the briefing of the parties and, for the reasons set forth below, affirms the Commissioner's decision.

### I. Procedural Background

Plaintiff filed an application for retirement insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, on November 15, 1993. The Commissioner approved the application initially, but refused to commence any payments until December 1994 on account of plaintiff's work activity. Plaintiff requested a reconsideration of the decision in February 1994. On reconsideration, the Commissioner ruled that, although plaintiff had reduced his work and earnings, his income still offset the benefits to which he was entitled.

An administrative hearing was then held before an administrative law judge ("ALJ"). On May 26, 1995, the ALJ ruled that plaintiff had not retired but, rather, continued to earn income offsetting any potential benefit

award. The Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision. Thus, the ALJ's ruling stands as the final decision of the Commissioner.

## II. Standard of Review

▮ The Commissioner's conclusions are binding on this court if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Dixon v. Heckler,* 811 F.2d 506, 508 (10th Cir.1987). The court's review is limited to determining whether the record as a whole contains substantial evidence to support the Commissioner's decision and whether the Commissioner applied the proper legal standards. *Berna v. Chater,* 101 F.3d 631, 632 (10th Cir.1996). While "more than a mere scintilla," substantial evidence is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

## III. Summary of Facts

Plaintiff Bernard Schmitz was born on December 11, 1928. For his entire adult life, Schmitz has owned and operated a farm near Andale, Kansas. On November 23, 1993, plaintiff incorporated his farming operation and, shortly thereafter, transferred the farm's assets to the corporation. Under the initial articles of incorporation for Schmitz Farms, Inc., plaintiff was the sole shareholder and director. In November 1994, however, plaintiff's wife acquired 50% of the corporation's stock and the corporation named plaintiff's brother as an additional director. Schmitz Farms Inc.'s employees have consisted, at all times, of plaintiff, his son, son-in-law, and brother-in-law.

In a statement to Social Security officials, plaintiff certified that the corporation makes all decisions concerning the farm but that he manages the farm for the corporation. (R. at 93). The terms of plaintiff's employment agreement require that the corporation pay him an annual salary of "$15,000 and bonuses ... in the form of agricultural commodities." (R. at 112). Plaintiff insisted that his compensation be paid in commodities because he believes that "form of income is not subject to social security." (R. at 94). The commodity payments entail transferring foodstuffs from the corporation to the employee either at the elevator or on an "on-the-farm commodity worksheet." The amount of compensation reported to the Internal Revenue Service is based on the value of the commodities at the time of transfer.

Plaintiff's salary is not predicated exclusively on his management responsibilities. He also performs agricultural labor on the farm. Prior to incorporating his operations, plaintiff had worked an average of 195–200 hours a month feeding and "working" cattle, maintaining farm equipment, and performing general field work. In December 1993, the first month in which Schmitz Farms, Inc. had control of the farm, and the month immediately following plaintiff's application for social security retirement benefits, plaintiff worked approximately 45–50 hours feeding and "working" cattle. The other employees on the farm each worked 50–55 hours doing similar work during the same time period. In a questionnaire dated April 5, 1994, plaintiff stated that he could not estimate how many hours he would work per month in 1994; he claimed only that his work would diminish on account of the farm's incorporation. (R. at 100).

According to his 1993 W–2 Wage and Tax Statement, plaintiff received $1,254.40 worth of agricultural commodities in compensation for his December 1993 work. He also received $9,461.00 as his share of the corporation's 1993 profits, based on a corporate tax year of November 23, 1993 through December 31, 1993.[2] No 1994 tax forms are included in the record. At the time he applied for benefits, however, plaintiff estimated his probable 1994 earnings at $44,000. Plaintiff's representative also testified before the ALJ in January 1995 that plaintiff had received $15,000 worth of commodities in 1994. (R. at 141).

## IV. Analysis

In setting out the general eligibility criteria for Social Security benefits, the Social Security Act states, in relevant part:

---

**2.** Plaintiff's 1993 pre-incorporation profit from the farm was $54,191.00.

Every individual who—

    (1) is a fully insured individual (as defined in section 414(a) of this title),

    (2) has attained age 62, and

    (3) has filed application for old-age insurance benefits ...,

shall be entitled to an old-age insurance benefit for each month....

42 U.S.C. § 402(a). There is no dispute that plaintiff meets each of the requirements in this statute. The controversy here revolves around the Social Security Act's mandatory benefit reductions for excessive earnings. *See id.* § 403(b).

If an otherwise qualified applicant continues to receive employment income in excess of statutory limits, the Commissioner must reduce the claimant's retirement benefits. *Id.* The deductions, determined by applying an "annual earnings test," are "made from any payment to which an individual is entitled until the total of the deductions equals the individual's benefit for any month that he is charged with excess earnings." *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir.1990).

### A.  Commodity Payments

    ■  Pointing to 42 U.S.C. § 409(a), which defines "wages" under the Social Security Act for purposes of benefit entitlement, plaintiff insists that the Commissioner erred by including agricultural commodity remuneration in calculating plaintiff's annual earnings. Section 409(a) provides, *inter alia,* that the term "wages" shall not include:

    (A) Remuneration paid in any medium other than cash for agricultural labor; [or]

    (B) Cash remuneration paid by an employer in any calendar year to an employee for agricultural labor unless—

        (i) the cash remuneration paid in such year by the employer to the employee for such labor is $150 or more, or

        (ii) the employer's expenditures for agricultural labor in such year equal or exceed $2,500.

42 U.S.C. § 409(a)(7). The same wage restrictions are included in the regulatory provision tracking this statute. *See* 20 C.F.R. § 404.1055 (1994). Plaintiff's analysis, how-

ever, confuses the computation of wages for purposes of determining benefit entitlement with the computation of wages for purposes of determining benefit reductions.

The statutory and regulatory provisions that plaintiff cites are designed to calculate an individual's initial entitlement to social security retirement benefits. Subpart K of the Social Security Administration Regulations, 20 C.F.R. §§ 404.1001–404.1096, underscores this point. The introduction to this subpart notes, "In general, your social security benefits are based on your earnings that are on our records.... Basically, you receive credit only for earnings that are covered for social security purposes. The earnings are covered only if your work is covered." 20 C.F.R. § 404.1001(a)(1) (1994). Moreover, in defining wages under Subpart K, the regulations explain that "[t]he term wages means remuneration paid to you as an employee for employment unless specifically excluded. Wages are counted in determining your entitlement to retirement ... insurance benefits." *Id.* § 404.1041(a).

In referencing agricultural labor, Subpart K mandates that "cash payments alone count as wages." *Id.* § 404.1041(e). The regulations make this point to contrast most other types of employment in which the form of an individual's wages is irrelevant for purposes of crediting the individual's earnings record. *See id.* § 404.1041(d). The proscriptions of section 404.1055 merely describe in greater specificity the agricultural payments that may be credited to an individual's earnings record and used to determine his or her retirement benefit eligibility. Section 404.1055 has no relevance, however, in determining the appropriate reductions to make from an otherwise qualified individual's monthly benefits. Indeed, it is no coincidence that Subpart K excludes 42 U.S.C. § 403, which governs benefit "deductions on account of work," from its detailed list of implementing statutory authorities.

Monthly benefit deductions are discussed in Subpart E of the Social Security Administration Regulations, 20 C.F.R. §§ 404.401–404.480. The introduction to this subpart notes that "[u]nder certain conditions the

amount of a monthly insurance benefit ... must be increased or decreased to determine the amount to be actually paid to a beneficiary." *Id.* § 404.401. One such deduction results from "an individual's earnings or work." *Id.* § 404.401(b)(1). For purposes of Subpart E, "an individual's wages are determined under the provisions of Subpart K ... except that, *notwithstanding the provisions of subpart K, wages also includes ... [p]ayments for agricultural labor excluded under § 404.1055.*" *Id.* § 404.429(c)(3) (emphasis added). Thus, although the regulations do not credit non-cash agricultural labor payments to an individual's earnings record, the regulations do count such payments in assessing whether an individual's current earnings offset monthly benefits.

Plaintiff seeks to avoid this regulatory rampart by arguing that the Social Security Administration's regulations are inconsistent with Congressional statutes. It is hornbook law that administrative regulations may not emasculate the plain meaning of governing statutes. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984) ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent."). The court, however, finds no inconsistency between the statutes and regulations at issue here.

*1. 20 C.F.R. § 404.429(c)(3) vs. 42 U.S.C. § 409(a)(7)*

Plaintiff first contends that 20 C.F.R. § 404.429(c)(3) defines "wages" in a manner that is inconsistent with 42 U.S.C. § 409(a)(7). The court disagrees. Although section 409(a)(7) states that agricultural labor wages do not include remuneration paid in any medium other than cash, that statute does not foreclose the Commissioner from including certain non-cash wages in calculating an individual's annual earnings test. Indeed, Congress conferred broad power on the Commissioner to promulgate a regulatory scheme under which an individual's earnings would offset retirement benefits. The enabling statute for the "annual earnings

test" regulations, 42 U.S.C. § 403, gives the Commissioner vast discretion in this area: "Deductions, in such amounts and at such time or times as the Commissioner of Social Security shall determine, shall be made from any payment or payments under this subchapter to which an individual is entitled...." *Id.* § 403(b)(1).

Moreover, Congress did not intend section 409(a)(7) to serve as a masking device by which individuals could manipulate their salary structure and boost their monthly benefit payments. Adopted as part of the Social Security Act Amendments of 1950, Pub.L. No. 81-734, 64 Stat. 492, the agricultural labor compensation provisions appear to have been designed only to restrict unquantifiable and de minimis payments from being used in the calculation of social security benefit entitlement. The examples of non-cash remuneration cited in the bill's legislative history include "lodging, food, clothing, agricultural or horticultural commodities, or car tokens or weekly transportation passes." S. Rep. No. 81-1669 (1950), *reprinted in* 1950 U.S.C.C.A.N. 3287, 3373. From this list, it seems certain that Congress did not envision a wholesale exclusion of items that could be converted easily into cash. *Cf.* Internal Rev. Rul. 79-207 (1979) (payments-in-kind, such as commodities, that are convertible immediately to cash, are treated as cash payments).

The cash-wage restrictions in the bill further underscore this point. Pursuant to 42 U.S.C. § 409(a)(7)(B), only annual cash payments under $150 and payments from an employer whose annual expenditures do not exceed $2500 are excluded from relevant computations. Such minimal thresholds have the effect of ensuring that only the wages of itinerant farmers and day laborers are excluded from social security eligibility calculations. Section 409(a)(7) was not intended as a loophole for individuals such as plaintiff to enrich themselves through sophisticated corporate transactions.

*2. 42 U.S.C. § 403(f)(5)(C)*

Plaintiff further suggests that 42 U.S.C. § 403(f)(5)(C) evinces a Congressional intent to exclude non-cash agricultural labor payments from the annual earnings test. Sec-

tion 403(f)(5)(C) mandates that in calculating reductions of retirement insurance benefits on account of work, "an individual's wages shall be computed without regard to the limitations as to amounts of remuneration specified in paragraphs (1), (6)(B), (6)(C), (7)(B), and (8) of section 409(a) of this title." Plaintiff avers that because section 409(a)(7)(B), which focuses on *cash* payments for agricultural labor, is included in section 403(f)(5)(C) while section 409(a)(7)(A), which discusses *non-cash* payments, is excluded, Congress must have intended that remuneration paid in any medium other than cash cannot be used to reduce benefits. The court finds this argument unpersuasive.

As the Commissioner astutely points out, plaintiff's theory ignores Congress' invocation of the phrase "the limitations as to *amounts* of remuneration." 42 U.S.C. § 403(f)(5)(C) (emphasis added). The paragraphs of section 409(a) referenced in section 403(f)(5)(C), therefore, discuss only payments of specific dollar figures. Inclusion of section 409(a) non-cash compensation provisions would make little sense in the context of section 403(f)(5)(C). The omission of any reference to non-cash payment statutes, however, does not mean Congress intended that such remuneration must be excluded from the computation of an individual's annual earnings test. Accordingly, the court finds that the ALJ properly included plaintiff's agricultural commodity payments in offsetting his retirement benefits.

### B. Corporate Profits

■ The ALJ also denied plaintiff immediate social security benefits after concluding that the incorporation of plaintiff's farm was little more than a stratagem to disguise wage income. Quoting *Martin v. Sullivan,* 894 F.2d 1520 (11th Cir.1990), the ALJ noted:

> [I]n order for a potential beneficiary to receive monthly cash benefits, he must be retired under the Act. Therefore, the Secretary has the authority and obligation to scrutinize any tax reporting strategies which appear to be for the purpose of qualifying for benefit deductions. While incorporation in order to receive Social Security benefits is permissible under the

Act, the Secretary must be assured that the alleged retirement is legitimate, actual and bona fide.

*Id.* at 1532. The ALJ observed that plaintiff exercises virtually complete control over Schmitz Farms, is the only shareholder in the highly profitable corporation other than his wife, continues to labor on the farm for nearly fifty hours a month, and receives substantial compensation for his services. Under such circumstances, the ALJ determined that plaintiff could not receive monthly retirement benefits.

The Supreme Court has held that "[t]he purpose of the Federal Old Age Benefits of the Social Security Act is to provide funds through contributions by employer and employee for the decent support of elderly workmen *who have ceased to labor.*" *Social Sec. Bd. v. Nierotko,* 327 U.S. 358, 364, 66 S.Ct. 637, 640, 90 L.Ed. 718 (1946) (emphasis added). The Tenth Circuit also has stated that the Commissioner "has, without question, the authority and the duty to pierce any fictitious arrangements among family members, and others, to shift salary payments from one to the other when the arrangement is not in accord with reality." *Gardner v. Hall,* 366 F.2d 132, 135 (10th Cir.1966).

In the case at bar, the ALJ properly found that plaintiff's corporate structure and employment agreement do not shield his wages from the annual earnings test. Plaintiff essentially has shifted his wages into corporate profits, thereby hoping to avoid any benefit offsets. Although he has reduced the time he spends performing manual labor, plaintiff continues to contribute substantial and valuable services to the now-corporate farm. To allow plaintiff to circumvent the annual earnings test in such a manner would not only contribute to a deficit in the Social Security Trust Fund, it would also undermine the basic purpose of the Social Security Act— supporting *retired* individuals. *See Nierotko,* 327 U.S. at 364, 66 S.Ct. at 640–41; *Martin,* 894 F.2d at 1526.

Plaintiff vehemently denies that the Schmitz Farms corporate entity is a sham. Plaintiff misses the point. The fact that the incorporation of his farm complied with all Internal Revenue Service requirements is

not the dispositive issue. The Social Security Act establishes a presumption of excess earnings that plaintiff must overcome. The Act states:

An individual will be presumed, with respect to any month, to have rendered services for wages ... of more than the applicable exempt amount ... until it is shown to the satisfaction of the Commissioner of Social Security that such individual did not render such services in such month for more than such amount.

42 U.S.C. § 403(f)(4)(B). Plaintiff conceded in his social security questionnaires that he incorporated his farm, entered into an employment contract, and arranged to be paid in commodities for the primary purpose of maximizing his social security retirement benefits. Plaintiff also stated that he remains an active laborer on the farm and manages all of the farm's business affairs. The fact that plaintiff receives the bulk of his pay in the form of corporate profits and commodities rather than cash wages does not allow him to escape the annual earnings test. His total compensation package continues to offset any potential retirement benefits to which he is entitled.

### V. Conclusion

After careful consideration of the record and the parties' arguments, the court concludes that the record contains substantial evidence to support the ALJ's determination.

IT IS, THEREFORE, BY THE COURT ORDERED that the Commissioner's determination is affirmed.

**IT IS SO ORDERED.**