**Michael J. ORTIZ, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

No. Civ.A. 98–2028–JWL.

United States District Court, D. Kansas.

Dec. 4, 1998.

Joan H. Deans, J.H. Deans Law Office, Raytown, MO, for Michael J. Ortiz, plaintiff.

Christina L. Medeiros, Office of United States Attorney, Wichita, KS, for Social Security, Commissioner of, Kenneth S. Apfel, defendant.

## ORDER

LUNGSTRUM, District Judge.

On November 12, 1998, United States Magistrate Judge Gerald L. Rushfelt issued his Report and Recommendation in the above captioned matter. The time for filing objections to the Report and Recommendation has come and gone and no objections have been filed.

The court has reviewed the thorough Report and Recommendation filed by Magistrate Judge Rushfelt. Based upon that review and the fact that no objection has been filed to it, the court accepts the Report and Recommendation in its entirety and **affirms** the decision of the Commissioner.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION

RUSHFELT, United States Magistrate Judge.

### NOTICE

Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R.Civ.P. 72, file written objections to such proposed findings and recommendations, including any findings of fact and conclusions of law. A party must file any objections within the ten-day period allowed; if that party wants to have appellate review of the proposed findings of fact, conclusions of law, and the recommended disposition. If no objections are timely filed, no appellate review will be allowed by any Court.

Pursuant to a Minute Order of August 11, 1998, the undersigned Magistrate Judge respectfully submits to the District Judge the following report and recommendation:

## REPORT AND PROPOSED FINDINGS

Plaintiff seeks judicial review of the final decision of the defendant Commissioner of Social Security (Commissioner), which denied his claims for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the Act), as amended. Plaintiff has filed a Motion for Judgment (doc. 10). Defendant has filed a brief in opposition. (*See* Brief of the Commissioner, doc. 13). The court should treat the motion as a petition for review, pursuant to D.Kan. Rule 83.7. It complies in all material respects with the requirements of the Social Security Act and the Federal Rules. The well-established standard of review for Social Security appeals applies. Judicial review of a decision by the Commissioner is limited to determining whether the administrative record as a whole contains substantial evidence to support the decision and whether the Commissioner applied the correct legal standards. *Schmitz v. Callahan*, 973 F.Supp. 1021, 1023 (D.Kan.1997), *aff'd*, 141 F.3d 1185 (10th Cir.1998). The court should rule upon the motion, as a petition for review, and resolve the action.

### I. Procedural Background

The record shows that on March 20, 1991, plaintiff applied for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401–33. (*See* Certified Tr. of the Record at 66–68, doc. 7, hereinafter referred to as Tr.) On May 8, 1991, the

Commissioner denied the claim initially. (Tr. at 80–81.) The application is unreadable with respect to the alleged onset of disability. (Tr. at 66–68.) Plaintiff pursued the claim no further.

On December 9, 1993, plaintiff applied for supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 1381–85 (Tr. at 88–100) and again applied for disability insurance benefits under Title II (Tr. at 84–87). In his application for supplemental security income and his second application for disability benefits he claimed disability, beginning December 1, 1986. (Tr. at 84, 89.) The Commissioner denied both claims initially (Tr. at–101–10) and upon reconsideration (Tr. at 124–31). On January 10, 1996, an administrative law judge (ALJ) conducted a hearing on both claims. (Tr. at 624–66.) Plaintiff appeared in person with his attorney. (Tr. at 624.) At that hearing he amended his alleged onset of disability to November 16, 1989. (Tr. at 627–29.)

On February 5, 1996, the ALJ found plaintiff "entitled to a period of disability commencing November 16, 1989, and to disability insurance benefits . . . and as of the date of the application for supplemental security income filed on December 9, 1993, claimant was 'disabled'," within the meaning of the Social Security Act. (Tr. at 50–51.) He also stated:

> It is the further decision of the Administrative Law Judge that claimant's entitlement to a period of disability and disability insurance benefits, and his eligibility for supplemental security income ended effective August 31, 1995, the end of the second calendar month after the month in which the disability ceased.

> It is the further decision of the Administrative Law Judge that claimant was subject to the provisions of Pub.L. 103–296 from March 31, 1995, the effective date of the Act, through June 1, 1995, the date his disability ceased, as his substance abuse was a contributing fac-

tor material to the determination that he was disabled during this period of time. (Tr. at 51.)

After taking additional evidence and making it part of the record, the Appeals Council denied plaintiff's request for review on November 17, 1997. (Tr. at 5–6.) Thus the findings of the ALJ stand as the final decision of the Commissioner in this case.

## II. Relevant Factual Background

Personal history of plaintiff includes the following: Plaintiff was born September 13, 1948. After graduating from high school he served in the military for two years. (Tr. at 631.) He lives in the Domiciliary at the Veterans Affairs Medical Center (VA). (Tr. at 632 .) He has held numerous jobs during the past fifteen years. (Tr. at 622.) They usually ended due to his abuse of alcohol. On very few occasions he simply left the job, because he did not like it. (Tr. at 633.) He has been in alcohol treatment sixty or seventy times since 1989. He lost his privilege to drive, due to excessive DWIs. (Tr. at 635.) He believes he cannot work outside a supportive atmosphere because of his alcoholism and bipolar affective disorder (BAD). (Tr. at 636–38.) He works four to five hours a day at the VA (Tr. at 639.) He testified that he could not perform a low-stress, eight-hour job in a structured environment; because he believes he would go back to drinking. (Tr. at 641.)

Medical records between 1989 and June 1994 reveal a severe alcohol impairment and some problems with depression and anxiety. (Tr. at 200–459, 468–77.) In 1992 and 1993 he scored between 41 and 55 on the Global Assessment Functioning (GAF) scale. (Tr. at 253, 280, 348, 353, 368). The medical record indicates nothing with regard to a bipolar affective disorder until August 1993, when a physician noted a provisional diagnosis of "? bipolar." (Tr. at 284.) Alcoholism was his primary problem through June 1994. (*See* Tr. at 200–459, 468–77.)

The VA formally diagnosed the bipolar disorder of plaintiff, after it admitted him on June 2, 1994, for substance abuse. His GAF score was then 50. (Tr. at 467.) Treatment focused upon both his alcoholism and BAD. (Tr. at 478–87.)

On June 10, 1994, the VA admitted plaintiff for substance abuse and BAD. His GAF score remained at 50. (Tr. at 462.) This admission ended on June 24, 1994, when the VA discharged him to its Domiciliary. He had satisfactorily completed his treatment program. He showed good improvement with medication and therapy. His mood swings were "under control." He had no side effects from medication. (Tr. at 463.) He had shown marked improvement since admission and was physically and psychiatrically stable on discharge. The evaluator, nevertheless, opined that plaintiff was "unable to hold a beneficial job for an indefinite length of time." The evaluator stated that the mood swings of plaintiff had been interfering with his employment and his clinical abuse was secondary to such mood changes—"he has been abusing alcohol as self medication." (Tr. at 464.)

Plaintiff was admitted to the Domiciliary of the VA on June 24, 1994, for "sobriety maintenance & stabilization of BAD." (Tr. at 29.) Medical records from the date of admission through May 31, 1995, reveal regular individual and group sessions with an addiction counselor, therapy with a psychologist, and other miscellaneous programs. They also reveal abstention from alcohol and steady improvement of BAD. (See Tr. at 498–515, 526–604.)

Plaintiff had fairly significant problems with his bipolar disorder in July, August, and September 1994. (Tr. at 571–604.) On September 2, 1994, the physician noted that plaintiff "continues to have significant mood swings, which interfere with job." (Tr. at 578.) On September 20, 1994, plaintiff, however, reported "no major problems at the present." (Tr. at 570.) On October 12, 1994, furthermore, he indicated that he might pursue school or employment, "if not approved for [Social Security Disability Income.]" (Tr. at 569.) On February 14, 1995, he indicated that he "sometimes ... gets mood changes." (Tr. at 548.) Although there were steady diagnoses of BAD and history of ethanol dependence throughout the medical record for the period June 1994 through May 1995 (see, e.g ., Tr. at 505, 507, 526, 528–29, 548, 562, 568, 571–72, 578, 582, 591, 600), the record reveals no severe episodes with regard to BAD in early 1995. The record, furthermore, is replete with references to plaintiff obtaining a degree in alcohol/substance abuse counseling. (See, e.g., Tr. at 550, 555, 557, 569–70, 572, 600.) One reference indicated that plaintiff was unclear with respect to whether he planned to work after receiving the degree. (Tr. at 557.)

On July 5, 1995, the VA noted that plaintiff's BAD was "stable" due to medication. His alcoholism was likewise stable. (Tr. at 520.) Progress notes dated July 26, 1995, reveal no significant problems, but his mood fluctuated up and down. He stated that he had remained sober for fourteen months. (Tr. at 30.) Progress notes dated August 3, 1995, reveal his alcohol abuse in remission for one year and BAD in remission. (Tr. at 29.) Notes regarding the Discharge Planning for plaintiff dated August 15, 1995, reveal that upon discharge he might perhaps do some part-time work, in security or as a handyman. (Tr. at 27.)

On September 26, 1995, plaintiff expressed anxiety about moving to a new dorm. The VA prescribed medication. (Tr. at.28.) On October 4, 1995, plaintiff reported to a scheduled appointment "wondering why I'm here so often." The progress notes of that date make no mention of BAD. (Tr. at 26.) A General Note, dated October 26, 1995, indicates that plaintiff was "previously denied NSC ( [meaning unknown] ) indicating his B.A.D. was 'not severe enough.'" It further indicates that plaintiff had "not appealed" that denial. (Tr. at 35.)

On November 22, 1995, plaintiff reported anxiety and depression to the VA. (Tr. at 25.) It admitted him on that date due to "[i]ncreased situational difficulty" at his residence in the Domiciliary. For the previous "couple of months" he and his roommate had had difficulties. He reported that "his mental status would normalize" upon a change of roommates. His current GAF score was 75. It had ranged from 65 to 85 during the past year. (Tr. at 10 .) Mental status evaluation revealed appropriate affect and generally intact concentration. His insight was fairly good to good. His judgment was intact. (Tr. at 12.) "Having established ... no significant deviation from baseline," the VA returned him to the Domiciliary with a new roommate pairing. (Tr. at 13.) He was discharged with the following Axis I diagnoses: (1) Bipolar affective disorder (BAD), with mild exacerbation secondary to roommate conflict; and (2) history of alcohol and drug abuse in remission. (Tr. at 10.) The VA also noted: "BAD by hx [ (history) ]—Generally stable." (Tr. at 20.)

A "PSYCHOLOGICAL ASSESSMENT/REVIEW" dated November 28, 1995, indicates that plaintiff was then immediately employable. (Tr. at 33 .) He had current complaints of increasing tension and anxiety, resulting in loss of sleep and general uneasiness. (Tr. at 33–34.) His complaints seem to originate from dissatisfaction with his roommate. The assessment ended with: "Diagnosis: Bipolar disorder by history." (Tr. at 34.)

On December 1, 1995, plaintiff sought and obtained a refill of medication. He had "no current problems." He returned to the VA on January 18, 1996, with complaints of anxiety and sleeplessness. The doctor prescribed medication. (Tr. at 23.)

Progress notes dated February 7, 1996, indicate an assessment of "BAD." (Tr. at 21.) Medication appeared effective in alleviating the condition. (Tr. at 20–21.) The doctor noted that plaintiff would skip medication at times. (Tr. at 32.) The VA continued him on medication and directed him to the "pill line" for stabilization. (Tr. at 21, 32.)

### III. Summary of Arguments

Plaintiff seeks an order to reverse the decision which found him not disabled after June 1, 1995. He suggests that substantial evidence on the record as a whole does not support the finding. He suggests that the Commissioner erred in not applying Pub.L. 104–121, which became effective March 29, 1996. He asserts that the final determination of non-disability in his case occurred on November 17, 1997, with the decision of the Appeals Council to deny his request for review. He contends the conclusion that his disability subsided after June 1, 1995, does not satisfy the regulatory requirement that the Commissioner consider the extent of his mental impairment without regard to substance abuse. He suggests that reliance upon testimony of Dr. Chance does not support a conclusion that his bipolar affective disorder was no longer disabling. He asserts that Dr. Chance points to no specific evidence of record to support that conclusion.

The Commissioner seeks an order affirming the decision, denying plaintiff disability benefits under 42 U.S.C. §§ 401–33 and supplemental security income under 42 U.S.C. §§ 1381–85 after May 31, 1995. He identifies the issue as whether his final decision is supported by substantial evidence on the record as a whole. He submits that substantial evidence supports his decision. He contends that plaintiff has not shown that he is incapable of substantial gainful activity after June 1, 1995. He argues that the decision of the ALJ that plaintiff could return to his previous work after June 1, 1995, is supported by substantial evidence. He suggests that, although plaintiff may have established a mental impairment by objective evidence, he did not establish that the impairment made him disabled. He asserts that the medical evidence shows no disability after June 1, 1995.

## IV. Standard of Review

The court reviews the decision of the Commissioner "to determine whether the record as a whole contains substantial evidence to support [his] decision and whether [he] applied the correct legal standards." *Taylor v. Callahan,* 969 F.Supp. 664, 668 (D.Kan.1997). The court may neither reweigh the evidence nor substitute its discretion for that of the Commissioner. *Kelley v. Chater,* 62 F.3d 335, 337 (10th Cir.1995). "Although the court is not to reweigh the evidence, the findings of the [Commissioner] will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them subs.tantial evidence, as the court must scrutinize the entire record in determining whether the [Commissioner's] conclusions are rational." *Dreadfulwater v. Callahan,* No. 96–1173, 1997 WL 557308, at *1 (D.Kan. Aug.12, 1997). This determination entails a review of "the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision." *Vogt v. Chater,* 958 F.Supp. 537, 538 (D.Kan.1997). "In applying these standards, the court must keep in mind that the purpose of the Social Security Act is to ameliorate some of the rigors of life for those who are disabled or impoverished." *Owen v. Chater,* 913 F.Supp. 1413, 1418–19 (D.Kan.1995).

Section 405(g) of Title 42 of the United States Code sets forth the standard of review which the court must follow in actions asserting disability under Title II. This section applies to final determinations of the Commissioner under Title XVI, furthermore, through 42 U.S.C. § 1383(c)(3). Section 405(g) provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Miller v. Chater,* 99 F.3d 972, 975 (10th Cir.1996) (quoting *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir.1993)) (internal quotations omitted). "A finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Burkett v. Callahan,* 978 F.Supp. 1428, 1429 (D.Kan.1997) (quoting *Trimiar v. Sullivan,* 966 F.2d 1326, 1329 (10th Cir.1992)). "The determination of whether substantial evidence supports the [Commissioner's] decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion." *Landes v. Callahan,* No. Civ.A. 96–1133–WEB, 1997 WL 557303, at *1 (D.Kan. Aug.1, 1997) (citing *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir.1989)).

The Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(A). For the purposes of this definition,

[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

*Id.* §§ 423(d)(2)(A), 1382c(3)(B).

"The Commissioner has developed a five-step sequential evaluation process for

determining disability." *Hayes v. Callahan,* 976 F.Supp. 1391, 1393 (D.Kan.1997) (citing *Williams v.. Bowen,* 844 F.2d 748, 750–52 (10th Cir.1988); 20 C.F.R. §§ 404.1520(a)–(f), 416.920).

> Step one is whether the claimant is currently engaged in substantial gainful activity. If not, the fact finder next considers whether "the claimant has a medically severe impairment or combination of impairments." Step three entails determining whether the impairment is equivalent to one of a number of impairments found in the "Listing of Impairments," 20 C.F.R. Part 404, Subpt. P, App. 1, which the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity. If no equivalency, the claimant must show that because of the impairment he is unable to perform his past work. The final step is to determine whether the claimant has the residual functional capacity (RFC) to perform other work available in the national economy, considering such additional factors as age, education, and past work experience.

*Vogt v. Chater,* 958 F.Supp. 537, 539 (D.Kan.1997) (citation omitted). "If the claimant fails at any of the steps in which he or she bears the burden of proof, consideration of any subsequent steps is rendered unnecessary. The claimant bears the burden of proof at steps one through four." *Burnett v. Shalala,* 883 F.Supp. 565, 567 (D.Kan.1995).

## V. Discussion

### 1. Applicability of Pub.L. 104–121

By public law dated March 29, 1996, Congress amended the definition of "disability" for purposes of Titles II and XVI of the Social Security Act. *See* Contract with America Advancement Act of 1996, Pub.L. 104–121, § 105(a)–(b), 110 Stat. 847, 853–54 (codified as amended 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J)). Under both Titles "[a]n individual shall not be considered to be disabled ... if alcoholism or drug addiction would (but for this sub-paragraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). The Commissioner has implemented regulations for assisting in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability. *See* 20 C.F.R. §§ 404.1535, 416.935.

Plaintiff suggests that the ALJ erred in not applying the amendments contained in Pub.L. 104–121 and later expounded upon in the regulations of the Commissioner, 20 C.F.R. §§ 404.1535(a), 416.935(a). He asserts that these amendments apply to his case, because the Commissioner finally adjudicated his claim only after the Appeals Council rejected his request for review. Earlier this year a similar issue was before the Tenth Circuit Court of Appeals. *See Sherman v. Apfel,* 141 F.3d 1185, No. 97–7085, 1998 WL 163355, at *3–4 (10th Cir. Apr.8, 1998) (Table, text on Westlaw). The Circuit declined to determine the applicability of the amendments to the appeal then before it, because "[t]he implementing regulations make clear that a finding of disability is a condition precedent to an application of the amendatory language." *Id.* at *4.

Plaintiff here appeals the decision of the Commissioner only to the extent he found no disability. The court thus need not determine the applicability of the amendments. Sections 404.1535(a) and 416.935(a) of Title 20 of the Code of Federal Regulations clearly demonstrate that the Commissioner must find disability before applying the amendatory language. Those sections provide that "[i]f [the Commissioner] find[s] you are disabled and ha[s] medical evidence of your drug addiction or alcoholism, [he] must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." The codification of the amendments, furthermore, indicates that a finding of disability by the Commissioner is a prerequisite to the ap-

plicability of the amendatory language. *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J) (providing that individuals shall not be considered to be disabled if alcoholism or drug addiction is "a contributing factor material *to the Commissioner's determination that the individual is disabled*" (emphasis added)). If the court finds reversible error on the part of the Commissioner, then he can address the applicability of the amendments upon remand. *See Sherman v. Apfel,* 1998 WL 163355, at *4.

Plaintiff argues that the Commissioner's consideration of alcoholism improperly affected his decision to deny benefits and supplemental security income after May 31, 1995. Notwithstanding the inapplicability of the amendments regarding consideration of substance abuse, this argument has a fatal flaw. The ALJ found plaintiff not disabled, after considering both his bipolar affective disorder and his alcoholism. Removing the alcoholism component from the equation does *not of itself change* the result. If substantial evidence supports the decision that plaintiff was not disabled considering both impairments, then substantial evidence supports a finding of no disability based only upon the bipolar affective disorder. The court should reject the contention that the Commissioner did not consider the extent of plaintiff's impairment without regard to substance abuse. There is no requirement to separate an impairment based upon substance abuse, until the Commissioner makes a determination of disability. The important question, moreover, is whether substantial evidence supports the finding of non-disability.

Plaintiff also suggests that the hypothetical questions to the vocational expert indicate that the ALJ failed to separately analyze plaintiff's mental impairments. Nothing requires the ALJ, however, to ignore an impairment based upon substance abuse, until he makes a determination of disability. Only at that time do Pub.L. 104–121 and the regulations direct the ALJ to disregard the substance abuse component. For the time period here in question the ALJ found no disability. Plaintiff has limited this appeal to the time for which benefits were denied. Neither party has appealed the time frame for which benefits were permitted.

## 2. Substantial Evidence

Plaintiff argues lack of substantial evidence on one narrow ground. He contends that reliance upon testimony of the psychological expert, George R. Chance Ph.D., does not support a conclusion that disability from his bipolar affective disorder ceased after May 31, 1995. He suggests that Dr. Chance points to no specific evidence of record to support that conclusion.

When evidence of a disabling mental impairment exists, the ALJ must evaluate and document the mental impairment(s) in accordance with applicable regulations under Title II, 20 C.F.R. § 404.1520a, and parallel regulations applicable to claims for supplemental security income under Title II, 20 C.F.R. § 416.920a. *Andrade v. Secretary of Health & Human Servs.,* 985 F.2d 1045, 1048 (10th Cir.1993). Evidence exists that plaintiff suffers from affective and substance abuse disorders. The regulations thus require the ALJ "to indicate whether certain medical findings which have been found especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The ALJ must then "rate the degree of functional loss resulting from the impairment(s)." *Id.* §§ 404.1520a(b)(3), 416.920a(b)(3). The ALJ "then determine[s] the severity of the mental impairment(s)." *Id.* §§ 404.1520a(c), 416.920a(c). If the "mental impairment(s) is severe [the ALJ] then determine[s] if it meets or equals a listed mental disorder." *Id.* §§ 404.1520a(c)(2), 416.920a(c)(2).

To record his conclusions, the ALJ or a medical advisor completes a Psychiatric Review Technique (PRT) Form. *Id.* §§ 404.1520a(d), 416.920a(d). It serves to evaluate the claimant under proper crite-

ria. The ALJ may complete the form with or without the assistance of a medical advisor. *Id.* The ALJ here completed it with assistance from Dr. Chance. (*See* Tr. at 646–661.) The procedure calls for rating four areas deemed essential to work: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) deterioration or decompensation in work or work-like setting. 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). The ALJ rates the first two areas (daily living and social functioning) on the following five-point scale: none, slight, moderate, marked, and extreme. *Id.* He or she rates the third area (concentration, persistence, and pace) on the following five-point scale: never, seldom, often, frequent, and constant. *Id.* He or she rates the fourth area (deterioration or decompensation) on the following scale: never, once or twice, repeated, and continual. *Id.* "The last two points for each of these scales represent a degree of limitation which is incompatible with the ability to perform the work-related function." *Id.*

Dr. Chance testified at the hearing before the ALJ primarily to assist in the completion of the PRT form. (Tr. at 646–661.) He testified that, after the alleged onset of disability, the medical record objectively established that plaintiff suffered from two separate mental impairments—substance addiction disorder and bipolar disorder. (Tr. at 647.) Looking at these disorders longitudinally, he initially found moderate limitations with respect to daily living activities; slight difficulties maintaining social functioning; often experienced deficiencies of concentration, persistence, or pace; and repeated episodes of deterioration or decompensation in work or work-like settings. (Tr. at 648–49.) His findings demonstrated that plaintiff barely missed meeting or equaling a listed impairment, because he averaged recent improvement of plaintiff with his previously more serious condition. (Tr. at 649.)

Considering plaintiff's disorders only since June 1995, Dr. Chance found slight limitations with respect to daily living activities; no difficulties maintaining social functioning; seldom as to deficiencies of concentration, persistence, or pace; and no episodes of deterioration or decompensation in work or work-like settings. (Tr. at 650–51, 655.) He estimated that plaintiff began to improve once he began the treatment program at the VA in June 1994. (Tr. at 649–50, 655.) He estimated that plaintiff reached marked improvement in the summer of 1995. (Tr. at 655–56.) He stated that he was "absolutely, unequivocally certain ... that by June or July of '95" that he would have rated the severity of plaintiff's mental impairments as "slight, none, seldom and never." (Tr. at 656.)

Dr. Chance noted that plaintiff improved with his counseling sessions. (Tr. at 650, 657.) The doctor stated that performing work-related activities at the hospital, being social, attending group sessions, and cooperating in treatment indicated improvement of plaintiff in his daily activities. (Tr. at 657.) The ability to handle job related activities and cooperating in the treatment process indicated improvements in concentration, persistence and pace. (Tr. at 657–58.) His interactions with others, seeking them out, and group counseling sessions indicated improvement in his social functioning. (Tr. at 659.)

For the period from "June, not-the-first, 1995 to Present", the ALJ found a bipolar affective disorder as evidenced by pervasive loss of interest in almost all activities; psychomotor agitation or retardation; feelings of guilt or worthlessness; difficulty concentrating or thinking; hallucinations, delusions, or paranoid thinking; hyperactivity; flight of ideas; easy distractibility; and involvement in activities that have a high probability of unrecognized painful consequences. (Tr. at 52–53.) He found a substance-abuse disorder. He evaluated it under the most closely applicable listing, *i.e.* the listing for affective disorders. (Tr. at 53.) He found slight restrictions of daily living and no difficulties in maintain-

ing social functioning. He found that plaintiff would seldom experience deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner. He found that he had no episodes of deterioration or decompensation in a work or work-like setting which caused him to withdraw from that situation or to experience exacerbation of signs and symptoms. (Tr. at 54.)

■ The record must contain substantial competent evidence to support the conclusions recorded by the ALJ on the PRT form. *Washington v. Shalala,* 37 F.3d 1437, 1442 (10th Cir.1994). The testimony of Dr. Chance supports those conclusions. He points to particular indicators of improvement in plaintiff's condition. The medical record supports finding that the condition of plaintiff had markedly improved by June 1995. The record contains nothing to indicate that he was then incapable of substantial gainful employment. His mental impairments were both "stable" as of July 5, 1995. (Tr. at 520.) They were in "remission" as of August 3, 1995. (Tr. at 29.) Plaintiff indicated in August 1995 that he might pursue some part-time work after discharge from VA. (Tr. at 27.) A psychological assessment dated November 28, 1995, indicates plaintiff capable of immediate employment. (Tr. at 33.)

In November 1995, furthermore, plaintiff had a current GAF score of 75, which had ranged from 65 to 85 during the previous twelve months. (Tr. at 10.) A score between 71 and 80 indicates that if symptoms are present, they are transient and expected reactions to psychosocial stressors. American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders DSM–IV* at 32 (4th ed.1994). It further indicates that the claimant has no more than a slight impairment in social, occupational, or school functioning. *Id.* Scores between 81 and 90 indicate absent or minimal symptoms, good functioning in all areas, interested and involved in a wide range of activities, and no more than everyday problems or concerns. *Id.* Scores

between 61 to 70 indicate some mild symptoms or some difficulty in social, occupational, or school functioning, but nevertheless generally functioning pretty well and has some meaningful interpersonal relationships. *Id.* Only by a score of 50 or less does one exhibit serious symptoms or any serious impairment in social, occupational, or school functioning; such as the inability to keep a job. *Id.*

■ The testimony of Dr. Chance in conjunction with the medical record as a whole constitutes substantial evidence to support the conclusions of the ALJ recorded on the PRT form. Nothing in the medical record detracts from the opinions of Dr. Chance. No contrary medical opinion exists. The treating physicians of plaintiff indicated in June 1994 that he would be unemployable for an indefinite period of time. (Tr. at 464.) They indicated in September 1994 that his condition continued to interfere with his job. (Tr. at 578.) They proffered no opinion as to his disability status as of June 1995. Their earlier opinions do not detract from the conclusions contained in the PRT form completed by the ALJ with the assistance of Dr. Chance and which was limited to the time period after May 31, 1995. Improvement of plaintiff necessitated that they set forth two ratings for his condition—one for the time period before marked improvement of his condition and one for the time period after marked improvement. (Compare Tr. 52–55 *with* Tr. 56–59.)

### 3. Waiver of Issues Not Raised

■ Plaintiff also makes a broad objection that substantial evidence does not support the opinion of the ALJ. Despite that objection, it appears from the briefing that only the previously discussed matters are here at issue. To the extent plaintiff attempts to raise other points of error through the general objection that the decision of the Commissioner is not supported by substantial evidence, the court should find them waived. Parties may waive issues, arguments, and objections by

not presenting them to this court. *Crow v. Shalala,* 40 F.3d 323, 324 (10th Cir.1994); *Tierney v. Chater,* 113 F.3d 1247, No. 96–5240, 1997 WL 288922, at *1 (10th Cir. May 30, 1997) (Table, text on Westlaw). The scope of review at the appellate level "is limited to those issues properly preserved and presented to the district court." *Jones v. Chater,* 110 F.3d 73, No. 96–5151, 1997 WL 158170, at *1 (10th Cir. Apr.2, 1997) (Table, text on Westlaw).

■ The perfunctory objection of plaintiff about the lack of substantial evidence does not preserve or present a specific issue to this court. Such objection is inadequate to apprise the court of a particularized point of error. *Cf. James v. Chater,* 96 F.3d 1341, 1343 (10th Cir.1996) (holding statement that "I am disabled and entitled to benefits" inadequate to raise particularized points of error to the Appeals Council). Such objection is too general to preserve specific issues for review. *Cf. Soliz v. Chater,* 82 F.3d 373, 375–76 (10th Cir. 1996) (holding a similar objection too general to preserve specific issues for appellate review under waiver rule applicable to proposed findings of Magistrate Judge). Accordingly, the court should find that plaintiff has waived all objections to the decision of the Commissioner, except those specifically argued and supported in his brief.

There being no error in the decision of the ALJ, the court should find that substantial evidence supports the finding that plaintiff's alcoholism and bipolar affective disorder did not prevent substantial gainful employment as of June 1, 1995. That plaintiff had a severe mental impairment separate from his alcoholism does not require a finding of disability. The evidence does not otherwise support a finding of disability.

### RECOMMENDATION

The court should affirm the decision of the Commissioner. Such affirmance will dispose of this case, including the Motion for Judgment (doc. 10) which has been considered as a petition for review.

Respectfully submitted.

November 12, 1998.