**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 29 2000**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

ROBERT M. DANIELS,

   Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,

   Defendant-Appellee.

No. 00-5009
(D.C. No. 98-CV-897-M)
(N.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **BRORBY** , **KELLY** , and **LUCERO** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\*   This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-appellant Robert M. Daniels appeals from an order of the district court affirming the Commissioner's decision denying his application for Social Security disability benefits. Appellant filed for these benefits in August 1995. He alleged disability commencing January 2, 1992, based on carpal tunnel syndrome, high blood pressure, ulcers and mental problems. The agency denied his applications initially and on reconsideration.

On November 14, 1996, appellant received a de novo hearing before an administrative law judge (ALJ). The ALJ determined that appellant retained the residual functional capacity (RFC) to perform light work, with the following restrictions: no repetitive pushing or pulling of arm controls, marked temperature extremes, vibration, repetitive hand motions with his left hand, or more than occasional driving. After receiving testimony from a vocational expert (VE), the ALJ found that appellant could not return to his past relevant work, but that there were a significant number of other jobs that he could perform in the national or

regional economy.[1]   The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision.

We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.  Andrade v. Sec'y of Health & Human Servs., 985 F.2d 1045, 1047 (10th Cir. 1993).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Fowler v. Bowen, 876 F.2d 1451, 1453 (10th Cir. 1989) (quotations omitted).

## I.  Severity of mental impairment

Appellant argues that the ALJ's conclusions concerning the severity of his mental impairment were not supported by substantial evidence.  The ALJ concluded that appellant's bipolar disorder was no more than mild and was well controlled with medication, and that it would not more than minimally affect

---

[1]     The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled.  Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant bears the burden of establishing a prima facie case of disability at steps one through four.  Id. at 751 n.2.  If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient RFC to perform work in the national economy, given his age, education and work experience.  See id. at 751.  The ALJ decided this case at step five.

appellant's ability to engage in work-related activities. The record supports these conclusions.

Dr. Louis Hoogewind signed assessment forms concerning appellant's condition at the time of appellant's admission to Parkside Hospital in August 1995. The forms noted that appellant's speech was "angry" and that his mood was "angry" and "depressed." Appellant's App., Vol. II at 334. Appellant's insight and judgment were rated as "poor." Id. He was able to remember only two of three objects after five minutes, had homicidal ideation, and could remember only two previous presidents of the United States. Dr. Hoogewind noted diagnoses of "Bipolar NOS" and "cocaine abuse" and assigned appellant a functional level of 46. Id.

Dr. Hoogewind saw appellant, however, before medication had been prescribed for his bipolar disorder. Subsequent to Dr. Hoogewind's evaluation, appellant began taking prescribed medications including lithium and mellaril. Less than three weeks later, treating physician Dr. Sue Storts reported that appellant's bipolar disorder was well-controlled with his medications. Id. at 320.

Dr. Goodman, a consulting psychiatrist, saw appellant in August 1996, one year after his admission to Parkside. Dr. Goodman stated, after examining appellant: "At this time [appellant] admits that his psychological problems do not prevent him from working. I tend to agree with him." Id. at 398. He further

stated that so long as appellant remained in treatment and abstained from using alcohol or drugs, "I see no reason why [appellant] cannot return to the same level of work that he has always done." Id. at 399.

Appellant raises several arguments in opposition to the ALJ's conclusions about the effect of his bipolar disorder on his ability to work. We consider each of these in turn.

1. ALJ's (alleged) conclusion that appellant did not have bipolar disorder

In his report, Dr. Goodman cast doubt on appellant's diagnosis of bipolar disorder. Among other things, he stated that the previous diagnosis had been made "by a Bachelor's level assistant counselor without any verification of his psychiatric diagnoses." Id. at 397. The ALJ mentioned this statement in his decision. Appellant argues from this that the ALJ incorrectly concluded, based on Dr. Goodman's report, that he did not have bipolar disorder. As noted, however, the ALJ accepted the diagnosis of bipolar disorder after reviewing all the evidence, but concluded that the condition was not severe. This issue therefore lacks merit.

2. ALJ's failure to discuss Dr. Hoogewind's findings

Appellant next complains that the ALJ erred by failing to discuss Dr. Hoogewind's diagnosis and findings in his decision. Appellant characterizes Dr. Hoogewind as a treating physician whose evidence and opinion could not be

disregarded without adequate explanation. <u>Washington v. Shalala</u>, 37 F.3d 1437, 1440 (10th Cir. 1994); <u>see also</u> 20 C.F.R. § 404.1527(d)(2) (requiring that controlling weight be given to treating physician's opinion regarding the nature and severity of a claimant's condition, if well-supported and not inconsistent with the other evidence). Although the assessment forms he signed indicate that he diagnosed appellant and prescribed medication for him, there is no evidence Dr. Hoogewind provided ongoing care for appellant. It is doubtful, therefore, that he is a "treating source" within the meaning of the regulations. 20 C.F.R. § 404.1502.

In any event, we do not agree that the ALJ's failure to discuss Dr. Hoogewind's assessment was reversible error. As mentioned, Dr. Hoogewind saw appellant before he began to take medication for his bipolar disorder. The report of Dr. Hoogewind's observations, prior to the time appellant began taking his medications, does not in any way undermine, nor is it "significantly probative evidence" in opposition to, the ALJ's ultimate conclusions concerning the seriousness of appellant's bipolar disorder <u>as controlled by medication</u>. <u>Clifton v. Chater</u>, 79 F.3d 1007, 1010 (10th Cir. 1996) (stating that ALJ must discuss "significantly probative evidence he rejects"). The ALJ expressly stated that he reached these conclusions after considering all the evidence in the record.

An ALJ is required to take into account the effects of treatment when assessing a claimant's RFC. SSR 96-8p, 1996 WL 374184, at *5. Given all the medical evidence, nothing in Dr. Hoogewind's reports is inconsistent with the ALJ's conclusions. Any error the ALJ committed by failing to discuss the reports therefore cannot form the basis for reversal.

3. ALJ's PRT form lacking in substantial evidence

Both Dr. Goodman and the ALJ completed psychiatric review technique (PRT) forms concerning appellant. The ALJ reached conclusions on his PRT form that were slightly less favorable to appellant than those reached by Dr. Goodman. Appellant contends that the ALJ should have followed Dr. Goodman's conclusions.

Dr. Goodman stated on the PRT form he completed that appellant "Often" had "Deficiencies of Concentration, Persistence or Pace Resulting in Failure to Complete Tasks in a Timely Manner" Appellant's App., Vol. II at 412. The ALJ's PRT form, by contrast, indicated that appellant "Seldom" had such deficiencies. Id. at 26. In other respects, the ALJ's rating of the severity criteria on his PRT form was nearly identical to that of Dr. Goodman.[2]

---

[2]    Dr. Goodman rated appellant's "Difficulties in Maintaining Social Function" at "Slight," while the ALJ rated this factor at "None." Appellant's App., Vol. II at 26, 412. Appellant does not make any argument concerning this discrepancy.

Appellant argues that the ALJ improperly disregarded Dr. Goodman's medical opinion without comment and substituted his own opinion on the PRT form. He contends that the ALJ's stated reasons for his conclusions on his own PRT do not outweigh Dr. Goodman's opinion, and that the ALJ's failure to explain the discrepancy between his PRT form and Dr. Goodman's requires reversal.

### A. Failure to follow Dr. Goodman's PRT form

Appellant's argument on the first point lacks merit, for at least two reasons. First, the ALJ has sole responsibility for determining appellant's RFC, including his mental RFC, based upon the record as a whole. 20 C.F.R. § 404.1527(e)(2); see also SSR 96-8p, 1996 WL 374184, at *4-5. Second, the PRT form is a psychiatrist's opinion, and the ALJ is not bound by conclusions expressed in such an opinion to the extent those conclusions are inconsistent with the psychiatrist's own clinical findings. See 20 C.F.R. § 404.1527(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); cf. Castellano v. Sec'y of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994) (stating even treating physician's opinion may be rejected if not supported by specific findings or the evidence).

Dr. Goodman's underlying findings concerning the lack of effect of appellant's bipolar disorder on his ability to work belie his conclusion that

appellant "often" had deficiencies of concentration, persistence or pace that would result in his inability to complete tasks in a timely manner. Because of this inconsistency between Dr. Goodman's PRT and his clinical findings, the ALJ permissibly departed from the conclusions reached on Dr. Goodman's PRT form.

### B. Failure to distinguish Dr. Goodman's PRT results

Even if the ALJ was free to disregard Dr. Goodman's opinion, however, appellant argues that he could do so only by providing a reasoned explanation. Appellant asserts that he failed to provide such an explanation, requiring reversal.

Where an ALJ's conclusions concerning a claimant's abilities, expressed on the PRT form, differ dramatically from those reached by a treating physician, an explanation is required. See Winfrey v. Chater, 92 F.3d 1017, 1024 (10th Cir. 1996). This is a corollary of the requirement that conclusions reached on the PRT be supported by substantial evidence. See Washington, 37 F.3d at 1442. Dr. Goodman was an examining, rather than a treating physician. This suggests that the duty to explain any discrepancy was less serious in his case than in Winfrey or Washington.

Here, the ALJ's conclusions on the PRT form did not differ dramatically from those reached by Dr. Goodman. Although the ALJ did not state expressly his reasons for rejecting Dr. Goodman's conclusions, he did note appellant's statement to Dr. Goodman that his psychological problems did not prevent him

from working. The ALJ also specifically noted three activities appellant was able to do that were inconsistent with his alleged inability to concentrate: reading, following television shows, and going to the library.

Appellant argues, however, that the activities mentioned by the ALJ are substantively insufficient to provide a reason for departing from Dr. Goodman's conclusion that he lacks the ability to concentrate. We disagree. First, as noted above, Dr. Goodman's conclusion about concentration on the PRT form lacks support from confirmatory findings. Second, a claimant's daily activities are properly considered when evaluating the severity of his alleged nonexertional impairments. 20 C.F.R. § 404.1529(c)(3)(i). Third, the ALJ stated that he had considered all the evidence in this case when reaching the conclusions on his PRT form, and we must presume that such evidence included Dr. Goodman's underlying findings concerning the lack of effect of appellant's bipolar disorder on his ability to go back to work. We conclude that the ALJ provided sufficient rationale for departing from Dr. Goodman's conclusion on the PRT form.

## II. **Commissioner's Step Five Finding**

Appellant next launches a number of attacks on the Commissioner's finding at step five that he could perform a significant number of alternative jobs. His first challenge rests on his assertion that the ALJ erroneously concluded that he did not have a severe mental impairment. He contends that the ALJ should have

presented appellant's mental impairments as part of the hypothetical question to the vocational expert. As noted above, however, appellant's attacks on the ALJ's conclusions concerning his bipolar disorder lack merit. Therefore, this derivative attack on the ALJ's hypothetical question also fails.

Appellant also attacks the ALJ's RFC finding as unsupported by the vocational testimony. The VE testified that appellant's past relevant work was unskilled, with the exception of his telemarketing experience. She stated that appellant could not do any unskilled jobs at the sedentary level because of his hand problems. She identified a number of unskilled jobs at the light level, however, that appellant could perform. Appellant contends that the VE later withdrew this testimony in response to further questioning by the ALJ, leaving no jobs that he could perform.

Appellant's argument misstates the record. The ALJ's initial hypothetical assumed a moderate to severe limitation on ability to grip and finger with the (non-dominant) left hand, and a mild limitation on ability to grip and finger with the right hand. Appellant's App., Vol. II at 84. Given these limitations, the VE testified that appellant could perform a number of unskilled, light jobs including food service worker, unskilled production labor, and unskilled office cleaning. Id. at 86. She also testified that appellant could perform the semi-skilled, sedentary job of sedentary order clerk. Id. at 85.

For his second hypothetical, the ALJ added mental restrictions based upon appellant's bipolar disorder. Id. at 88. The VE testified that if appellant were limited in his ability to interact with the general public, he could not do the sedentary order clerk job. The ALJ then posed a third hypothetical, assuming the mental limitation but also a moderate, rather than mild, limitation on ability to finger and grip with the dominant right hand. Id. Under these circumstances, the VE stated that approximately fifty percent of the light jobs would be eliminated. Id. at 89. The ALJ then asked the VE whether there were any light or sedentary jobs that appellant could perform if he couldn't do much handling of objects at all. At this point, the VE conceded, in language now cited by appellant, that there were most likely no jobs that appellant could perform. Id. at 90.

When it came to his decision, however, the ALJ did not accept the limitations identified in his third and fourth hypotheticals. Rather, he concluded that appellant had only a moderate limitation in his ability to grip and finger with his left hand, and a mild limitation in his ability to grip and finger with his right hand. Id. at 22. These limitations were not inconsistent with the VE's testimony that there were light, unskilled jobs that appellant could perform.

The ALJ is not bound by the VE's responses to hypothetical questions that include assumed restrictions not ultimately found by the ALJ to be supported by the record as a whole. See Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir.

1993). The fact that the VE testified (in response to hypothetical questions listing impairments that the ALJ ultimately rejected) that appellant could not perform any jobs is irrelevant to the outcome of this case. Appellant fails to show that the ALJ's conclusions about his ability to use his hands were lacking in substantial evidence.

Appellant also argues that the ALJ erred in concluding that he had transferable skills from his work as a telemarketer. Since the ALJ's conclusion that appellant could perform unskilled, light jobs is supported by substantial evidence, and the ALJ listed a sufficient number of jobs in the national economy at that skill and exertional level, it is not strictly necessary to determine whether appellant could perform skilled work. We note, however, that appellant errs in arguing that he had only one month's experience as a telemarketer. In fact, it appears from the record that he had the requisite three to six months' experience as a telemarketer to have learned the job, which carries a specific vocational preparation (SVP) level of 4. Appellant's App., Vol. II at 44, 83, 154; see generally United States Dep't of Labor, Dictionary of Occupational Titles, Vol. II, App. C (4th ed. Rev. 1991). Therefore, the ALJ did not err in determining that appellant had transferable skills from his telemarketing work.

The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.

Entered for the Court


Wade Brorby
Circuit Judge