52 F.3d 339
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 David B. WARREN, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 94-6225.
(D.C. No. CIV-93-769)
 United States Court of Appeals, Tenth Circuit.
 April 17, 1995.
 ORDER AND JUDGMENT[1]
 
 1
 Before KELLY and SETH, Circuit Judges, and KANE,** District Judge.
 
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Claimant David Warren appeals from an order of the district court affirming the Secretary's decision to deny him disability insurance benefits. On appeal, Mr. Warren argues the administrative law judge (ALJ) did not base his opinion on substantial evidence. In particular, he alleges the ALJ's conclusion that Mr. Warren can return to his past relevant work is erroneous. He also maintains improper legal standards were used to evaluate the disability claim. We affirm.
 
 
 4
 Mr. Warren applied for disability benefits on January 19, 1990. At that time, he was thirty-five years old. He alleged disability beginning in October of 1986. Although the record contains some evidence of physical problems, the main focus of Mr. Warren's application was on his mental impairments and his substance addiction. The record reveals that he suffers from major depression and an affective personality disorder. He also has a history of abusing marijuana and alcohol. His employment history is varied, and includes work as a dishwasher, dining room attendant, paint maker, and laborer, among others. He has never held a job for more than a few months.
 
 
 5
 The ALJ determined that although Mr. Warren's problems are severe, he does not have a listed impairment. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.01-09 (mental disorders listings). The ALJ then went on to analyze whether Mr. Warren's limitations prevent him from working. The ALJ concluded that despite his impairment, Mr. Warren could return to the vast majority of his prior positions. The district court affirmed that conclusion on appeal, in large part adopting the recommendation of the magistrate judge. In his report, the magistrate recounted the evidence carefully, and noted that although there was some evidence in the record to support Mr. Warren's position, the substantial weight of the evidence supported the Secretary's decision.
 
 
 6
 On appeal, we review the Secretary's decision to determine whether it is based on substantial record evidence. Cruse v. United States Dep't. of Health & Human Servs., No. 94-6230, 1995 WL 75493, at * 2 (10th Cir. Feb. 23, 1995). In addition, we must examine the legal standards which the ALJ applied to confirm they were proper. In doing so, however, we may not reweigh the evidence or substitute our judgment for the Secretary's. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir.1993). Credibility determinations remain the province of the ALJ. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1499 (10th Cir.1992).
 
 
 7
 Disability applications premised on mental impairments, including substance addiction, require a very particularized analysis. See Hargis v. Sullivan, 945 F.2d 1482, 1487 (10th Cir.1991).
 
 
 8
 [The] procedure first requires the Secretary to determine the presence or absence of "certain medical findings which have been found especially relevant to the ability to work," sometimes referred to as the "Part A" criteria. 20 C.F.R. 404.1520a(b)(2). The Secretary must then evaluate the degree of functional loss resulting from the impairment, using the "Part B" criteria. [Id.] 404.1520a(b)(3). To record her conclusions, the Secretary then prepares a standard document called a Psychiatric Review Technique Form (PRT form) that tracks the listing requirements and evaluates the claimant under the Part A and B criteria. See Woody v. Secretary of Health & Human Servs., 859 F.2d 1156, 1159 (3d Cir.1988); 20 C.F.R. 404.1520a(d). At the ALJ hearing level, the regulations allow the ALJ to complete the PRT form with or without the assistance of a medical advisor and require the ALJ to attach the form to his or her written decision. Id.
 
 
 9
 Cruse, 1995 WL 75493, at * 2. In this case, the ALJ was required to apply this procedure under 12.04, 12.08, and 12.09 of the regulations. See 20 C.F.R. Pt. 404, Subpt. P, App. 1. These sections describe the appropriate method of analyzing claims of affective personality disorders, personality disorders, and substance addiction disorders.
 
 
 10
 The ALJ filled out the PRT form. He noted that for most purposes, Mr. Warren's functional limitations are slight. The ALJ identified decompensation in work settings as a problem but noted in his opinion that when treated, Mr. Warren responds reasonably well, and that his medical records indicate that a treatment goal is to secure employment.[2] The ALJ discussed Mr. Warren's daily activities, and concluded he is able to function with his limitations if the tasks are not detailed and the position nonstressful. Based on our careful review of the record, we conclude the ALJ conducted the proper analysis. See Washington v. Shalala, 37 F.3d 1437, 1440-1443 (10th Cir.1994)(discussing evaluation of RFC where claimant has severe mental impairment).
 
 
 11
 We likewise affirm the ALJ's conclusion that Mr. Warren retains the residual functioning capacity (RFC) to perform substantial gainful employment. The record includes psychological evaluations from two consulting mental health providers who determined Mr. Warren retained the RFC to work. Supp. Rec. at S74, S95. Likewise, Dr. Harald Krueger, who examined Mr. Warren for the Secretary, stated on examination that although Mr. Warren's judgment appeared poor, he was well oriented, cooperative, coherent, and did not evidence any thought disorder. Id. at S269-70. In addition, counselors at the Lodestar Center, where Mr. Warren was treated in 1991, found he was well oriented, cooperative, and polite. Id. at S276.
 
 
 12
 Mr. Warren argues that "there is no basis in the record for the ALJ's conclusion that Mr. Warren is able to understand, remember and carry out simple one-step tasks and can relate superficially with co-workers and supervisors about work matters." Appellant's Br. at 20. We must disagree. The consulting psychologists, as well as Dr. Krueger, made comments supporting the ALJ's conclusion that Mr. Warren is capable of performing simple tasks with supervision. Supp. Rec. at S74, S95; see also id. at S268 (report from Dr. Krueger stating his belief that Mr. Warren "is able to reason and make occupational, personal and social adjustments"). Moreover, as late as February 27, 1991, a disability examiner spoke with Mr. Warren's part-time employer who reported he was "doing well at work and no problems observed." Id. at S143. The record supports the ALJ's opinion in this regard.
 
 
 13
 This evidence notwithstanding, Mr. Warren argues the RFC evaluation is flawed because the ALJ did not obtain and consider an RFC report from Dr. Gary Moore, a treating physician from April 1990 through early 1991. We must reject this suggestion for several reasons. First, Mr. Warren is simply wrong when he states that the Secretary is responsible for obtaining an RFC evaluation from a former treating physician. The regulations do not include that requirement. Rather, the Secretary must make diligent efforts to obtain medical records from those who have treated the claimant. That is a very different obligation, and it is one which was satisfied here. See 20 C.F.R. 404.1512(d)(describing the responsibilities of the Secretary).
 
 
 14
 Moreover, Dr. Moore did complete an evaluation of Mr. Warren, albeit not on one of the Secretary's standard forms. On January 25, 1991, Dr. Moore sent a letter evaluating Mr. Warren in response to a request from the Oklahoma Disability Determination Unit. Supp. Rec. at S266-67. In that letter, Dr. Moore discussed Mr. Warren's condition. He stated he did not know what Mr. Warren's daily activities were. The letter states, however, that Mr. Warren decompensates at times and also that at times he has problems with coworkers and supervisors. Dr. Moore concluded that Mr. Warren "can probably manage benefit payments in his own interests to a degree." Id. at S267.
 
 
 15
 Mr. Warren is certainly correct when he states that the ALJ must normally afford great weight to the opinion of the treating physician. Reyes v. Bowen, 845 F.2d 242, 244-45 (10th Cir.1988). The ALJ here did not, however, reject the opinion of Dr. Moore. When combined with the other evidence in the record, Dr. Moore's evaluation is consistent with the overall picture of Mr. Warren as a man with severe, but controllable, problems. The ALJ did not disregard his comments. He simply made the disability determination considering all the medical evidence and the regulations. That approach was proper. See Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir.1994)(Secretary makes ultimate disability determination).
 
 
 16
 Mr. Warren also takes issue with the ALJ's comment that his substance abuse is in remission. This comment was based on the testimony of Mr. Warren himself, when he stated that he had not used drugs since the summer of 1991. Supp. Rec. at S53. In addition, an evaluation form completed at the Lodestar Counseling Center sometime between June and November 1991 (the date is unclear) indicates that at that time Mr. Warren remained "clea[n] and sober." Id. at S276. There is substantial evidence in the record to support the ALJ's determination that at the time of the hearing, Mr. Warren was not abusing drugs or alcohol.
 
 
 17
 There is no question that Mr. Warren has problems, and we do not quarrel with the ALJ's assessment that his mental impairment is severe. We do not agree with Mr. Warren, however, that his impairment is the cause of his inability to work. This was a step four proceeding. See Sorenson v. Bowen, 888 F.2d 706, 710 (10th Cir.1989)(outlining five-step procedure used to evaluate disability claims). We have carefully reviewed the briefs, the record, and the relevant law. We conclude Mr. Warren did not sustain his burden of proving a disability under the applicable regulations and law. Consequently, we uphold the decision of the district court.
 
 
 18
 The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 **
 Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 [2]
 Mr. Warren takes issue with the ALJ's comment that medical advisors have recommended he seek employment. He maintains that only one provider made this recommendation, and that was in 1984. The record reveals otherwise. As late as June of 1991, counselors at the Lodestar Center identified "locating employment [and] taking responsibility" as treatment goals. Supp. Rec. at S277. A 1987 report also comments on Mr. Warren's employability as a strength. Id. at S192. In a disability report completed in the summer of 1990, Mr. Warren noted that his doctor told him he was "ready to go to work or hold gainful employment." Id. at S165